

**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore**

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Tommye Sydnie Seawell-Sanders, | * | Case No. 14-21328-MMH |
| | * | |
| Debtor. | * | Chapter 13 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

An individual debtor often files a chapter 13 case to try to save a home from foreclosure. A debtor may accomplish this objective by, among other things, curing prepetition arrears on the mortgage through a confirmed chapter 13 repayment plan while making timely postpetition payments on the mortgage directly to the mortgage lender. This approach requires the debtor to make two different payments each month, namely one to the chapter 13 trustee for disbursement under the plan and the other to the mortgage lender. If a debtor cannot sustain these payments, the lender may seek relief from the automatic stay under section 362 of the Bankruptcy Code[1] to exercise its state law rights and, likely, proceed to foreclosure on the home. A lender may be willing to provide the debtor with an opportunity to cure any such defaults and avoid an immediate modification of the automatic stay as to the debtor's home. In such a scenario, a consent order

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").

resolving the lender's motion for relief from stay typically memorializes the parties' agreement and is presented to the bankruptcy court for approval.

These basic facts underlie the dispute before the Court. The above-captioned Debtor and Specialized Loan Servicing LLC (collectively with its assigns and successors, the "Lender") entered into a Consent Order Modifying the Automatic Stay in late January 2015 (the "Consent Order"). ECF 48. The Court entered the Consent Order on February 9, 2015. *Id.* By the Consent Order, the parties agreed to a payment schedule that allowed the Debtor to cure certain postpetition defaults and confirmed the Debtor's future payment obligations under the mortgage. The parties now dispute the interplay of the Consent Order with a Notice of Mortgage Payment Change filed with the Court on January 7, 2015 (the "2015 Notice"). For the reasons set forth below, the Court finds the Debtor's interpretation of the Consent Order more consistent with the language of the documents, applicable law (including Bankruptcy Rule 3002.1), and generally accepted rules of construction.

## I. Relevant Background

The Debtor filed this chapter 13 case on July 17, 2014. The Debtor filed all required documents and attended her meeting of creditors under section 341 of the Code on September 22, 2014. The Debtor submitted four different proposed repayment plans. ECF 19, 30, 34, 47. The Court confirmed the Debtor's Third Amended Chapter 13 Plan [ECF 47] on March 17, 2015.[2] ECF 52. The Debtor then modified that plan, with Court approval, on several occasions. The Debtor is current on her payments to the Chapter 13 Trustee under her confirmed plan.

---

[2] The Court also confirmed the Debtor's Second Amended Chapter 13 Plan [ECF 34, 35], but that Order was subsequently vacated upon the Chapter 13 Trustee's request. ECF 42.

2

The Lender initially filed a motion for relief from stay on January 5, 2015.[3] ECF 39. The Debtor objected to that motion [ECF 43] and, as noted above, the parties resolved the motion by the Consent Order. The Consent Order modified the automatic stay of section 362(a) of the Code with respect to the Debtor's home, but included the following relief:

> IT IS ALSO ORDERED that the above Order Modifying the Stay is stayed, provided the Debtor:
> 1. cures the post petition arrearages and attorney fees and costs due to the Movant in the amount of $4,299.12 by adding said amount to the Modified Chapter 13 Plan to be paid to Movant by the Chapter 13 Trustee in addition to the pre-petition claim of arrearages filed by Movant; Debtor shall file the Modified Plan accordingly within 20 days of the entry of this Order; and[]
> 2. makes the regular monthly payment of $716.52, subject to change, on or before February 01, 2015, and on the 1st day of each month thereafter, as they become due, pursuant to the terms of the Promissory Note secured by the Deed of Trust on the above referenced property. This shall include the payment of all real estate taxes and hazard insurance as they become due ….

Consent Order, ECF 48, at 2. Under the Consent Order, the Debtor was given one opportunity to cure any defaults thereunder. The Consent Order also states that the Lender does not waive any of its rights by accepting partial payments during a cure period and that the automatic stay still terminates, despite such acceptance, unless the default is cured in full. *Id.* at 3.

The Lender filed an Affidavit of Default under the Consent Order on November 24, 2015. ECF 55. The Lender then filed an Affidavit of Foreclosure on June 17, 2016, which it subsequently withdrew. ECF 58, 59. The Lender's most recent Affidavit of Default, which is at issue in this contested matter, was filed on February 7, 2019 (the "2019 Affidavit of Default"). ECF 99. The Debtor filed an objection to the 2019 Affidavit of Default, primarily contesting the amount, and the Lender's calculation of, the asserted default under the mortgage and the Consent Order.

---

[3] The Court notes that the entity currently asserting rights under the mortgage documents, U.S. National Bank, NA, as trustee, was not the Lender at the time of the motion for relief from stay or the related Consent Order. *See* Assignment of Claims Transfer Agreement, ECF 94, filed on August 28, 2017. Nevertheless, as a successor or assign to the signatory institution to the Consent Order, U.S. National Bank, N.A., as trustee, and any party asserting rights under the mortgage documents, are bound by the Consent Order.

3

ECF 100. The parties' dispute concerning the default amount stems from the Consent Order and the 2015 Notice, which was filed by the Lender prior to executing or filing the Consent Order.

The Court held a hearing on the 2019 Affidavit of Default and the related objection on March 21, 2019. That hearing was continued by the Court and then by the parties on several occasions, with the continued hearing being held on July 18, 2019. The Court has reviewed the docket in the Debtor's chapter 13 case, all relevant pleadings, and the contested 2015 Notice (as well as subsequent Notices of Mortgage Payment Change filed by the Lender). The Court also has considered the parties' arguments and the applicable provisions of the Code and the Bankruptcy Rules. This matter is now ripe for resolution.

## II. Jurisdiction and Legal Standards

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. § 157(b)(2).

The Lender filed the 2015 Notice (and subsequent notices) in accordance with Bankruptcy Rule 3002.1. In January 2015, that rule provided, in pertinent part,

> **(b) Notice of Payment Changes.** The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

Fed. R. Bankr. P. 3002.1(b) (2015).[4] "As succinctly stated by another bankruptcy court, Bankruptcy Rule 3002.1 'was adopted in December 2011 to address a significant problem caused

---

[4] The current version of Rule 3002.1, adopted in 2018, reads, in pertinent part,
**(b) Notice of payment changes; objection**
**(1) Notice**
The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest-rate or escrow-account adjustment, no later than 21 days before a payment in the new amount is due. If the claim arises from a home-equity line of credit, this requirement may be modified by court order.

4

when mortgage companies applied fees and costs to a debtor's mortgage while the debtor was in bankruptcy without giving notice to the debtor and then, based on these post-petition defaults, sought to foreclose upon the debtor's property after the debtor completed the plan.'" *In re Howard*, 563 B.R. 308, 313 (Bankr. N.D. Cal. 2016) (citations omitted).

### III.     Analysis

The primary issue before the Court is whether the Consent Order altered the monthly payment amount set forth in the 2015 Notice. Under the 2015 Notice, the Debtor's monthly payment was set at $944.74. Under the Consent Order, the Debtor's monthly payment was noted as $716.52. The Lender bases its calculation of the Debtor's alleged default under the mortgage documents and the Consent Order using the $944.74 monthly payment for the entirety of 2015, beginning on February 1, 2015. The Debtor bases her calculation of the alleged default using the $716.52 monthly payment for that same general period. Consequently, the Lender asserts that the Debtor owes $4,057.55, while the Debtor believes that she owes only $1,318.91.[5]

The Lender does not dispute that the Debtor made all but two payments under the mortgage documents and the Consent Order. The difference between the parties' respective positions relates solely to the amount of the payments due for most of 2015. Despite that, the Lender apparently has not pressed the issue until now when the Debtor is ready to complete her chapter 13 repayment plan and receive her discharge. The Debtor has complied with all payment obligations under her chapter 13 repayment plan, and with all obligations (other than the disputed payments noted above) under the mortgage documents and the Consent Order, for almost five years.

---

**(2) Objection**

A party in interest who objects to the payment change may file a motion to determine whether the change is required to maintain payments in accordance with § 1322(b)(5) of the Code. If no motion is filed by the day before the new amount is due, the change goes into effect, unless the court orders otherwise.

Fed. R. Bankr. P. 3002.1(b) (2018).

[5] The Debtor acknowledges that she missed two payments under the mortgage documents and Consent Order—i.e., one in May 2015 and one in 2018.

5

The Court acknowledges that the Lender has the right to adjust payments due under the mortgage documents and to receive those payment from the Debtor in accordance with the parties' contract terms. That said, at least with respect to payment adjustments, the Lender also must comply with Bankruptcy Rule 3002.1, which in many ways was intended to address the kind of end of case surprise to a chapter 13 debtor evident in this case.[6] The rule is designed not only to notify a debtor of a payment change, but also to explain and highlight the change for the debtor in an effort to mitigate potential confusion and mistakes that could derail a debtor's bankruptcy case.[7]

In this case, the Lender filed the 2015 Notice on January 7, 2015. This filing occurred just two days after the Lender filed its motion for relief from stay. Consequently, both the Lender and the Debtor were aware of the 2015 Notice when they were negotiating the Consent Order to resolve the Lender's motion for relief from stay. As noted above, the parties did not reach an agreement on the Consent Order until after January 7, 2015, and the Court did not enter the Consent Order until February 9, 2015.

---

[6] *See, e.g., In re Melendez Vega*, No. 16-08722 (ESL), 2019 WL 927006, at *2 (Bankr. D.P.R. Feb. 21, 2019) ("Fed. R. Bankr. P. 3002.1 ('Rule 3002.1') became effective on December 1, 2011, and amended on December 1, 2016, and applies only to residential mortgages in chapter 13 cases. Rule 3002.1(a). The intent is to provide a procedural device for bankruptcy courts to resolve how much a chapter 13 debtor owes on a residential mortgage and prevent 'unexpected deficiencies' prior to the closing of the case. The rule supplements the provisions of § 1322(b)(5) for the cure and maintenance of payments on a debtor's residential mortgage. 9 Collier on Bankruptcy ¶ 3002.1.02 (Alan N. Resnick & Henry J. Sommer, 16th Ed.)."); *In re Pillow*, No. DK 11-11688, 2013 WL 10252924, at *2 (Bankr. W.D. Mich. Mar. 18, 2013) (discussing the adoption of Rule 3002.1 and noting that "[u]ltimately, the drafters hoped that by requiring lenders to give periodic notice of payment changes, debtors could avoid the shock that some have experienced at the end of their plan terms upon discovering that, despite having made all payments in good faith, their mortgage arrears quietly grew—in some instances, substantially").

[7] As explained by one court, "[a] secured creditor holding a lien over the residence of a chapter 13 debtor must give notice to the debtor, debtor's counsel and the chapter 13 trustee of any post-petition change to the mortgage payment at least 21 days before the new payment is due. Rule 3002.1(b). Any recoverable fee, charge or expense must be notified within 180 days from incurring the same and must be detailed and itemized. Rule 3002.1 (c). The notice must be in the prescribed official form and does not constitute prima facie evidence of its validity. Rule 3002.1 (d). Since there is no presumption of validity, the notice must describe the charges with particularity. The debtor must challenge any itemized fee, charge or expense within one year after notice is given. Rule 3002.1(e). The chapter 13 trustee must give notice of final payment upon plan completion within 30 days. Rule 3002.1(f). The secured creditor must reply to the chapter 13 trustee's notice within 21 days and inform whether the pre-petition default was cured and whether the debtor is current on payments under § 1322(b)(5) and itemize any noncompliance. Rule 3002.1 (g). The chapter 13 trustee or the debtor must respond within 21 days stating any disagreement with the secured creditor's itemized notice. Rule 3002.1(h). Sanctions against a secured creditor may be imposed for violation of its duties under the rule. Rule 3002.1(i)." *In re Garcia Rivera*, No. 15-07601 (ESL), 2018 WL 5281625, at *2 (Bankr. D.P.R. Oct. 22, 2018).

The relevant language of the 2015 Notice provides that the new total payment (principal, interest, and escrow if any) of $944.74 was first due and effective on February 1, 2015. The Consent Order, which was negotiated and executed after the filing of the motion for relief from stay and the 2015 Notice, provides that the Debtor was to make "the regular monthly payment of $716.52, subject to change, on or before February 01, 2015." Consent Order, ECF 48, at 2. A straightforward reading of the Consent Order, which is subsequent in time to the 2015 Notice, is that the Consent Order supersedes the 2015 Notice and establishes a monthly payment of $716.52, starting on February 1, 2015.[8]

The foregoing conclusion also is supported by the general principle that parties may consensually modify contractual terms, including payment adjustments in connection with a Rule 3002.1 notice or a motion for relief from stay, and a court may approve such an agreement.[9] In addition, Bankruptcy Rule 3002.1(b) was amended in 2018 to expressly *acknowledge* the parties' rights in this respect,[10] which previously existed not only under general principles

---

[8] In this case, both parties had knowledge of the 2015 Notice and the language of the Consent Order before executing that order and submitting it to the Court for approval. The Court, in turn, presumably relied on the terms of the Consent Order in approving it. (The Consent Order was executed by the Honorable James Schneider.) Whether the 2015 Notice and Consent Order are considered pleadings, agreements, or instruments, the later executed document generally controls. *See, e.g., Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.' *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160, 162 (2d Cir.2000); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1476 (2d ed. 1990) ('A pleading that has been amended ... supersedes the pleading it modifies.... Once an amended pleading is interposed, the original pleading no longer performs any function in the case....')."); *Decca Records, Inc. v. Republic Recording Co.*, 235 F.2d 360, 363 (6th Cir. 1956) ("A second contract of a later date than an earlier contract containing the same subject matter, but containing terms inconsistent with the former contract, will supersede the former contract even though there is no express agreement that the new contract shall have that effect."). *See also Twist v. Arbusto*, No. 4:05-CV-0187-JDT-WGH, 2006 WL 1547083, at *6 (S.D. Ind. June 2, 2006) ("The parties to, the subject matter of, and the consideration for both the Partnership and Subscription Agreements are identical. … Based on the language and content of the Agreements, the court concludes that the Partnership Agreements [later in time] supersede the Subscription Agreements."); *TMC CO., Ltd. v. M/V MOSEL BRIDGE*, No. 01 CIV.7860 LAK, 2002 WL 1880722, at *2 (S.D.N.Y. Aug. 15, 2002) (applying same general principle).

[9] *See generally Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228 (4th Cir. 2000) ("Food Lion's argument is without merit. Kurfees' debt to Food Lion was not 'discharged'; rather, it was settled by an agreed order in the bankruptcy court. Section 524(e) does not preclude the consensual settlement of claims; it merely clarifies the effect of a discharge.").

[10] The advisory committee note to the 2018 amendment to Rule 3002.1(b)(2) states that "what is now subsection (b)(2) is amended to *acknowledge* the right of the trustee, debtor, or other party in interest, such as the United States trustee,

concerning consensual resolutions but also in the context of objections to a creditor's proof of claim.[11] Bankruptcy Rule 3002.1(b) currently provides that the change noted in a Notice of Mortgage Payment Change "goes into effect, *unless the court orders otherwise*." Fed. R. Bankr. P. 3002.1(b)(2) (emphasis added).

The Lender argues for a result contrary to this reading, relying primarily on the language "subject to change" following the $716.52 reference in the Consent Order. According to the Lender, these three words indicate that the monthly payment could be something different than $716.52. The Court agrees with that general proposition but finds that the more plausible reading of the Consent Order is a prospective application of the "subject to change" language. In other words, the monthly payment under the Consent Order was set at $716.52 but could be changed by subsequent Notices of Mortgage Payment Change filed in accordance with Bankruptcy Rule 3002.1. In fact, the Lender did file subsequent Notices of Mortgage Payment Change, and the Debtor did comply with those notices.[12]

The Lender also argues that because $716.52 was the Debtor's original monthly payment under the mortgage documents, setting that amount in the Consent Order would make little sense. The Debtor counters that the Consent Order was addressing both an outstanding default of $4,299.12, as well as the ongoing monthly payments so that the $716.52 payment amount, at least initially under the Consent Order, did make sense. The Court finds little value in entertaining this

---

to object to a change under subdivision (b)(1)." Fed. R. Bankr. P. 3002.1, Adv. Comm. Note—2018 Amendment (2018) (emphasis added).

[11] A Rule 3002.1 notice acts as a supplement to the creditor's proof of claim. *See, e.g.,* 11 U.S.C. § 502; Fed. R. Bankr. P. 3002, 3002.1(d), 3007. The relevant form, Official Form 10, expressly states this principle, including the version of the form used in 2015. *See, e.g.,* Creditor's Notice of Mortgage Payment Change dated January 7, 2015.

[12] The Lender filed Notices of Mortgage Payment Change on January 10, 2016; January 7, 2017; January 30, 2017; March 30, 2018; September 20, 2018; and March 19, 2019.

8

argument concerning the parties' intent, as the language of the Consent Order is clear and the Lender was the party who drafted the Consent Order.[13]

### IV. Conclusion

For the reasons set forth above, and based on the language of the 2015 Notice and the Consent Order, the Court finds the Debtor's interpretation of the Consent Order supported by the documents themselves and a more plausible reading of the Debtor's obligations under the Consent Order.[14] The Court will enter a separate order consistent with and incorporating this Memorandum Opinion, which sustains the Debtor's Objection to the 2019 Affidavit of Default.

cc:
Debtor
Debtor's Counsel
Creditor's Counsel
Chapter 13 Trustee

**END OF MEMORANDUM OPINION**

---

[13] *See, e.g., United States v. Seckinger*, 397 U.S. 203, 210 (1970) (noting "general maxim that a contract should be construed most strongly against the drafter"); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 321 (4th Cir. 2001) (citing *Seckinger*).

[14] Because the Court resolves the parties' dispute based on the plain language of the documents filed on the docket in this case, it need not address potential waiver or estoppel arguments applicable to the Lender's decision to not pursue the alleged defaults under the mortgage documents and the Consent Order for approximately three years and as the Debtor approaches the end of her case. *See, e.g., In re Clark*, No. 11-11723-R, 2018 WL 6266179, at *11–12 (Bankr. N.D. Okla. Nov. 26, 2018); *In re Garza*, No. 08-60088, 2012 WL 4738651, at *3 (Bankr. S.D. Tex. Oct. 1, 2012).